1       IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
2               EASTERN DIVISION

3

4   UNITED STATES OF AMERICA,          )   No. 21 CR 373
                                       )
5            vs.                       )   Chicago, Illinois
                                       )
6   KAROL J. CHWIESUIK,                )
                                       )   June 11, 2021
7            Defendant.                )   12:04 p.m.

8                    TRANSCRIPT OF PROCEEDINGS
9   BEFORE THE HON. GABRIEL A. FUENTES, MAGISTRATE JUDGE

10
    APPEARANCES:
11
    For the Government:    MR. JOHN D. COOKE
12                         United States Attorney's Office,
                           219 South Dearborn Street, Room 500,
13                         Chicago, Illinois  60604

14  For the Defendant:     MR. TIMOTHY M. GRACE
                           Gottreich, Grace & Thompson,
15                         311 West Superior Street, Suite 215,
                           Chicago, Illinois  60654

16

17

18

19

20

21

22
                    PATRICK J. MULLEN
23                 Official Court Reporter
                United States District Court
24         219 South Dearborn Street, Room 1412
                 Chicago, Illinois  60604
25                   (312) 435-5565

1    (Telephonic proceedings on the record.)

2    THE COURT:  Mr. Chwiesuik, just by saying yes or no,

3    do you consent to a telephonic initial appearance today under

4    the CARES Act?

5    THE DEFENDANT:  Yes.  This is Karol Chwiesuik.  Yes, I

6    do consent to continue.

7    THE COURT:  Okay.  Let me just first ask you this,

8    Mr. Grace.  Have you had an adequate or, I should say, a

9    reasonable opportunity to consult with your client about the

10   nature of the initial appearance proceeding today?

11   MR. GRACE:  Yes, I have, Your Honor.

12   THE COURT:  And have you either provided the affidavit

13   of removal and the attached complaint and arrest warrant to

14   your client or have you had a chance to at least discuss and go

15   over it with him?

16   MR. GRACE:  I have, Your Honor.

17   THE COURT:  All right.  So, Mr. Chwiesuik, in today's

18   initial appearance, what we're doing, it's your first

19   appearance upon arrest in this case, and the Court is required

20   under Rule 5 of the criminal procedure rules to advise you of a

21   number of things.

22   So let me just ask, Mr. Cooke, if you can make a

23   record for the Court, please, as to when Mr. Chwiesuik was

24   arrested.

25   MR. COOKE:  Mr. Chwiesuik was arrested at

1    approximately 8:00 a.m. today, Your Honor.

2        THE COURT:  Thank you.  So in the initial appearance

3    Rule 5 requires you to get your appearance before a magistrate

4    judge without unnecessary delay, and that's why I'm here.  So

5    I'll advise you of a number of things, first of all, the nature

6    of the charge that is present here.

7        You are charged according to the complaint that's

8    attached to the removal affidavit with unlawful entry on

9    restricted buildings or grounds in violation of Title 18 of the

10   U.S. Code, section 1752(a)(1) and (2), and violent entry,

11   disorderly conduct, and other offenses on U.S. Capitol grounds

12   in violation of Title 40 of the U.S. Code, sections

13   5104(e)(2)(c)(i), or little Roman (i), (d) and (g).  Okay?

14   That's what you're charged with.

15       If you review the complaint affidavit out of the

16   District of Columbia, you'll see that those charged offenses

17   relate to your alleged presence on the grounds and the facility

18   of the United States Capitol on January 6 of 2021, first of

19   all.

20       So, Mr. Cooke, under Rule 58 which covers misdemeanors

21   we're required to go through certain things, and I just want to

22   confirm with you that the charges today are misdemeanors.  Are

23   they, or have I misunderstood somehow?

24       MR. COOKE:  That's correct, Your Honor.  They are

25   misdemeanors.

1       THE COURT:  All right.  So I'd like you to state,

2   Mr. Cooke, for our record what the minimum and maximum

3   penalties are for these charged offenses as we're required to

4   do under Rule 50(a)(2)(a).

5       MR. COOKE:  Your Honor, the two offenses with which

6   the defendant is charged under section 1752 of Title 18 carry

7   the same maximum penalties, and they are not more than one year

8   in prison, a fine of not more than $100,000, and a maximum term

9   of supervised release of one year.

10       The three offenses charged against the defendant under

11   section 5104 of Title 40 also carry the same maximum penalties.

12   They are not more than six months in prison, a fine of not more

13   than $5,000, and a term of supervised release is not authorized

14   for those three offenses.

15       THE COURT:  All right.  Are there any minimum

16   penalties required under either of the charged offenses or

17   under any of them?

18       MR. COOKE:  There are no mandatory minimums, Your

19   Honor.

20       THE COURT:  All right.  Is there also a special

21   assessment that is associated with these offenses?

22       MR. COOKE:  There is not, Your Honor.

23       THE COURT:  All right.  So that's another item we

24   needed to tell you about that the Court with the assistance of

25   Government's counsel has done, Mr. Chwiesuik.  So I now want to

1  move on to your right to counsel.  So you have the right, sir,

2  to retain counsel, and if you cannot retain your own counsel,

3  you have the right to ask the Court to have counsel appointed

4  for you.

5          Now I'll just ask Mr. Grace.  Mr. Grace, are you here

6  as retained counsel?

7          MR. GRACE:  I am, Your Honor.

8          THE COURT:  All right.  So the record will reflect,

9  Mr. Chwiesuik, that you have retained counsel today.  Mr. Grace

10  is appearing to represent you today, so I'm required to tell

11  you that.  You also have a right to request the appointment of

12  counsel if you're unable -- excuse me.  I'm going over the

13  wrong one.

14          You have a right not to make a statement,

15  Mr. Chwiesuik.  You have a right to not make a statement, and

16  any statement that you may already have made may be used

17  against you.  So I'm required to tell you that.

18          I'm also required to tell you that you have the right

19  to trial, judgment, and sentencing before a district judge,

20  okay, unless you consent to trial, judgment, and sentencing

21  before a magistrate judge.  Okay?  So I'm required to tell you

22  that.

23          You also have a right to a jury trial before either a

24  magistrate judge or a district judge.  Also in this case, I

25  want to tell you that you have a right to a preliminary

1   examination at this point under Rule 5.1.  So preliminary

2   examination, it's a limited purpose hearing.  It's for the

3   purpose of determining whether there's probable cause to

4   support the Government's assertion that this offense happened

5   and that you committed it.  The Government would present

6   evidence.  It can present hearsay evidence, meaning

7   out-of-court statements by witnesses or statements by witnesses

8   containing out-of-court statements that are offered for their

9   truth, and your counsel would have the opportunity at a

10  preliminary hearing to cross-examine those witnesses.

11          A couple of things with regard to a preliminary

12  examination that I'm required to tell you, and that is you can

13  actually waive your right to have that preliminary hearing if

14  you wish to do so.  If you wish to have that preliminary

15  hearing in this district or in the District of Columbia, you

16  have the ability to have that done in the district which you

17  select.  So that's what I'll tell you about your preliminary

18  examination rights.

19          Furthermore, you've got the ability to ask, if you're

20  not a U.S. citizen -- and all defendants get this advice in

21  initial appearances -- if you're not a U.S. citizen, you may

22  request that an attorney for the Government or a federal law

23  enforcement official notify a consul officer from the

24  defendant's country of nationality, from your country of

25  nationality, that you've been arrested.  But even if you don't

1  request it, a treaty or other international agreement might

2  require consul notification.  So I'm required to tell you that.

3  I will also tell you out of an abundance of caution

4  under Rule 5(f) that the Court will confirm for you the

5  obligation of the Government to disclose to you any information

6  that is favorable to you that is material to guilt or

7  punishment, and the failure to do that may result in various

8  consequences up to and including dismissal of the charges and

9  disciplinary action against the prosecution.

10  So I believe those are the matters that we need to

11  cover under Rule 5 and Rule 58.  Anything else on behalf of the

12  Government in terms of advice to the defendant at this point?

13  MR. COOKE:  No, Your Honor.

14  THE COURT:  All right.  On behalf of the defense?  I'm

15  going to talk about the release-slash-detention issue in a

16  minute.

17  MR. GRACE:  Not on that, Your Honor.  We're good.

18  THE COURT:  Okay.  So let's talk about the

19  circumstances that would involve your release from custody in

20  this case while it is pending, in other words, circumstances

21  under which you may obtain pretrial release.

22  Does the Government have a position on detention at

23  this time?

24  MR. COOKE:  Your Honor, the parties have discussed a

25  release plan for the defendant and have submitted to Your Honor

1  some proposed conditions of release, I believe.  Judge, did you
2  receive those forms from me?

3       THE COURT:  I am looking at them.  I just wanted to
4  have you make your record as to what the Government's view is.

5       MR. COOKE:  Yeah, the Government's position, Judge, is
6  that the defendant should be released based upon those
7  conditions that the parties agreed to in the paperwork
8  submitted to the Court.  There is one disagreement, though,
9  about the terms of conditions.  The Government believes, in
10  addition to the terms of conditions that we proposed, that the
11  defendant shall not possess any firearm or destructive device
12  while under supervision, that he surrender his FOID card, and
13  that any residence he live in be firearm-free.

14       THE COURT:  Okay.  So there's disagreement as to those
15  two proposed conditions.  I want to hear from Mr. Grace about
16  that and about any other conditions, but before I do, I want to
17  ask you, Mr. Cooke, about another condition.  Okay?

18       Under additional condition 6 very often the Court
19  releases persons into the custody of a third party custodian to
20  make sure that that person supervises the defendant, uses every
21  effort to assure appearance in court, and notifies the Court if
22  the defendant violates a condition of release.  Here there's no
23  third party custodian proposed.

24       Just a couple of days ago, the Government had a
25  matter, United States versus Kulas, in which a young person

1  from the north suburbs was charged with similar offenses, and

2  the requirement was that he be placed in the custody of his

3  mother to make sure that all those things happened.  Why hasn't

4  that condition been proposed here?

5         MR. COOKE:  Your Honor, the Government feels that the

6  conditions that we did propose were sufficient to assure his

7  appearance.  The Government wouldn't be opposed to adding a

8  third party custodian if the Court thinks that's appropriate

9  and the defendant has someone who can serve in that role.

10        THE COURT:  Why don't we let Mr. Grace address that,

11  because I'm concerned about treating similarly situated

12  defendants in a similar way.  I don't immediately see why there

13  shouldn't be a third party custodian here if we thought that

14  one was necessary in the Kulas matter, but why don't you tell

15  me about that, Mr. Grace.

16        MR. GRACE:  Judge, let me give you a little

17  information about Karol.  Okay?  He's 29 years old.  He was

18  born on the northwest side of Chicago.  He attended high school

19  at Notre Dame College Prep in Niles.  He graduated in 2010.  He

20  then matriculated on to the University of Missouri where he

21  received two degrees, a Bachelor of Arts Degree in political

22  science and also one in Russian language.  He actually took the

23  LSAP but decided law wasn't the way he wanted to go.

24        He came back to the Chicagoland area, and he applied

25  for and was accepted into the Cook County Sheriff's Department

1   where he served as a Cook County deputy for two years.  In

2   2018, the Chicago Police Department hired him, and he was

3   appointed as a police officer in December of 2018.  He lives in

4   the Harlem and Higgins area with his parents who, by the way,

5   have no weapons in the house.  The only weapons there in the

6   house are owned by Karol.  He's never been arrested.  He has no

7   background.

8           Judge, he was up until three days ago assigned to the

9   11th District of the Chicago Police Department.  He worked on

10  the watch which is patrol.  That's on the west side of Chicago.

11  During his short time period as a Chicago police officer, he

12  has actually been named police officer of the month in 2019.

13  He's retrieved a crime reduction award in 2019.  He's also had

14  many honorable mentions, and I believe he's on the list for an

15  accommodation that's coming down the line.

16          So, Judge, he's not married and he has no children.

17  He has employment.  I don't believe there are any allegations

18  of violence that we're going to hear about.  So I believe that

19  Karol is someone who does not need to have a supervisory person

20  over him.  I do understand the Court's concern regarding, you

21  know, equally protecting and treating people the same, but

22  that's why I agree with the Government that he should not have

23  a third party.

24          THE COURT:  All right.  I'm considering all of that,

25  and what I'm going to do, despite the concern I'm expressing

1    that similarly situated persons be treated similarly, despite

2    the fact that there appear to be parents living in the home, I

3    think if I heard you right, with your client, it seems to me

4    one of them could step forward and be a third party custodian.

5         I'm going to ask pretrial services to provide the

6    Court with a post-detention hearing report in which pretrial

7    services addresses that issue and expresses to the Court its

8    view as to whether a custodianship should be added to this case

9    because I think their input is important and I'd like to hear

10   it.

11        But based on the agreement of the parties today on the

12   conditions of release, I'm going to respect that agreement for

13   today's purposes.  Then if we need to address custodianship

14   later, we'll be able to do that.

15        Any objection to that, Mr. Cooke, on behalf of the

16   Government?

17        MR. COOKE:  No, Your Honor.

18        THE COURT:  Mr. Grace, on behalf of Mr. Chwiesuik, I

19   know you've stated your client's opposition to custodianship

20   generally at this point, but anything further on that,

21   Mr. Grace?

22        MR. GRACE:  No, Judge, we have nothing further.

23        THE COURT:  Very well.  So let's address this issue of

24   firearms.  I'll ask the Government to tell me why it wishes to

25   have him be in a place where there's no firearms in the home

1   and why he should not unlawfully use or -- I'm looking at the
2   condition -- possess a firearm, destructive device, or other
3   dangerous weapon, and then we'll hear from Mr. Grace on that.
4          MR. COOKE:  Judge, the Government's position arising
5   out of the allegations in the complaint against the defendant,
6   these are serious and troubling allegations, although they are
7   charged as misdemeanor offenses.  As the complaint alleges, the
8   defendant traveled from Chicago to Washington, D.C., to
9   participate in protests that were planned to take place in
10  Washington.
11         Two days before the riot on January 6th of 2021, as
12  alleged in the complaint, he's texting messages with an
13  associate of his who's referred to as "subscriber" in the
14  complaint, and the subscriber refers to unsuccessful lawsuits
15  challenging the integrity of the election in November of 2021.
16  In response to that text message, the defendant is alleged to
17  have written, quote, didn't read, busy planning how to fuck up
18  commies, end quote.  That was three days before January 6th.
19         Then on January 6th, as the evidence in the complaint
20  shows, the defendant is at the Capitol and has joined a mob and
21  breached the Capitol, entered the Capitol against the law, and
22  gotten so far as the interior of a U.S. Senator's office.  It's
23  very disturbing conduct, Your Honor, and that type of behavior
24  is especially troubling when it's joined with the possession of
25  a firearm.  That is why, that is the main reason we think he

1    should give up his firearms.

2         THE COURT:  Let me ask you this question.  Are you

3    proffering that Mr. Chwiesuik possessed his service firearm or

4    any other firearm while on Capitol grounds on January 6th?

5         MR. COOKE:  I am not, Judge.

6         THE COURT:  Okay.  Do you know, Mr. Cooke, and can you

7    tell me Mr. Chwiesuik's -- and Mr. Grace can address this, too,

8    but what can you tell me about Mr. Chwiesuik's current

9    employment status with the police department?  Mr. Grace

10   mentioned he's been in the 11th District assignment until three

11   days ago.  What's going on with his employment and firearm

12   possession status with the police department now?

13        MR. COOKE:  My understanding, Judge, is that the

14   defendant was moved from patrol duty to desk duty recently and

15   that he no longer has the power to make arrests and is actually

16   not permitted to bring his firearm to work.

17        THE COURT:  All right.  Let me turn this over to

18   Mr. Grace.  Mr. Grace, I do want you to remember to add any

19   additional information you have about his current status

20   concerning the firearm in your client's official capacity.  I

21   think the word that's sometimes used is "stripped."  Has he

22   been stripped, or what's his status?  So tell me why you don't

23   think these conditions ought to be added to the release order

24   and the additional information I'm looking for.

25        MR. GRACE:  I understand, Judge.  So let's talk about

1  what his status is.  The Chicago Police Department through the
2  internal affairs division, Judge, I spend a lot of time with.
3  I'm a Fraternal Order of Police attorney, so I kind of
4  unfortunately know a fair amount of these regulations.

5  So he has been stripped of his police powers, meaning
6  he has no right to make arrests, he has no right to go out on
7  the street and act as a law enforcement officer.  But due to
8  the fact that he also has contract rights through the
9  collective bargaining agreement, the Chicago Police Department
10  can't just fire him.  Okay?  He is right now fit for duty, and
11  pending a hearing or a determination by the powers that be at
12  the Bureau of Internal Affairs, he may or may not be suspended.
13  He may or may not get terminated from his position.  We don't
14  know what will happen.  So right now because of that he is fit
15  for duty, and the police department put him in an area that is
16  commonly referred to as the call-back unit.  Lots of police
17  officers are there awaiting disciplinary decisions.

18  So once a court of competent jurisdiction, which this
19  Court certainly is, makes a determination that a condition of
20  his bond is that he cannot possess a firearm, he then puts
21  himself into a position where he is not fit for duty.  It
22  wouldn't be any different, Judge, if he lost his driver's
23  license.  Okay?  Because he cannot possess a firearm, because
24  he cannot drive a vehicle, he is then not fit for duty.

25  So Karol's response to the police department is:

1    Well, you better at least pay me.  Let me keep my health care.
2    Let me continue to accrue pension benefits.
3              And the department's response is:  Well, no, we don't
4    have to because you're not fit for duty.  We couldn't even put
5    you back on the streets if we wanted to.
6              THE COURT:  Let me interrupt you.
7              MR. GRACE:  So if you --
8              THE COURT:  Let me interrupt you for a second.
9              MR. GRACE:  Go ahead.
10             THE COURT:  If that course of events occurred, doesn't
11   he have contract rights to either file a grievance or to oppose
12   that kind of determination and that kind of adverse action
13   against his employment?
14             MR. GRACE:  He has a right to fight or to oppose
15   whatever the ultimate discipline is, but right now the police
16   department says:  We don't control what Judge Fuentes orders.
17   Okay?  You are not fit for duty.  We couldn't put you back on
18   the street if we wanted to.  Your problems right now aren't
19   with us.  It's with the court system or whoever took away your
20   gun.
21             For instance, a lot of officers lose their FOID cards
22   because they forget to renew it, and the officers get placed
23   into a non-paid status because they're unfit for duty and
24   there's no grievance I can file.  It goes to -- I have to go to
25   IFP to get his FOID card reinstated, and then when the FOID

1  card is reinstated I bring it over to the Bureau of Internal

2  Affairs and say:  Hey, here, now he's fit for duty.

3        So I hope I answered your question.  I tried to.

4        THE COURT:  No, I appreciate it.  I do think I have

5  another follow-up for you, though.  Mr. Cooke said that the

6  police department's current stance toward your client is that

7  not only is he assigned to desk duty and he's not on patrol

8  duties, not really on the street, therefore, but he's not

9  permitted to bring his firearm to work.  Is that -- can you

10  confirm that, Mr. Grace, or do you disagree with it?

11        MR. GRACE:  No, I agree with that assessment.  Right

12  now, the Chicago Police Department is saying to Karol:  You are

13  not allowed to carry a weapon as a law enforcement officer.

14        So can Karol have a weapon at his house?  Can Karol,

15  if he were to get the proper credentials in Illinois, get a

16  concealed carry license?  Can he do those things?  Absolutely.

17  But CPD is saying -- as I said, they've taken his badge.

18  They've taken his identification.  They've given him new

19  identification that's showing as just like a civilian employee,

20  and they're telling him he cannot bring a weapon into the

21  building, just like you or I could not bring a weapon into

22  like, you know, headquarters or the 11th District.  So again, I

23  hope that answers your question.

24        THE COURT:  Oh, it does.  I want to be sensitive to

25  his circumstances, but at the same time I want to treat

1   similarly situated people similarly.  I've done a little bit of
2   research into how some of these other cases have been handled
3   in other jurisdictions.  One of them is the case of United
4   States versus Robertson.  That's in the Western District of
5   Virginia.  That involves a Virginia officer from the town of
6   Rocky Mount who was charged with similar offenses stemming from
7   January 6th.  I actually reviewed the release order entered in
8   his case.  I noted a couple of things.  It did include a
9   condition that he not possess a firearm, destructive device, or
10  other weapon, and I'm going to find that I will require that
11  here in order to effect release as far as Mr. Chwiesuik is
12  concerned.
13          If there is some other collateral consequence to that
14  that somehow makes it an inappropriate condition of release,
15  that's something that, Mr. Grace, you can bring to the Court's
16  attention.  It would be new information, not currently known to
17  you now.  So I am going to require that condition.
18          The other thing --
19          MR. GRACE:  Your Honor, not to --
20          THE COURT:  Well, hold on.  Hold on.
21          MR. GRACE:  Yes, Judge.  I'm sorry.
22          THE COURT:  I'll give you a chance in a second.
23          MR. GRACE:  Sure.
24          THE COURT:  The other thing that I noted in the
25  conditions is the amount of the unsecured bond for Officer

1  Robertson was $15,000.  It was unsecured, and an unsecured bond
2  here has been proposed in the amount of 4500.  That proposal
3  has been made in other cases.  Mr. Kulas, I think, was a $4500
4  bond.  I've had another matter in this district where the
5  amount that I unilaterally suggested should be posted -- not
6  posted, but the face amount of the bond was 10,000.  So I'm a
7  little concerned at 4500.

8          I understand they're misdemeanors.  I also understand
9  the nature of the charges actually are very serious in my view.
10  That's why I imposed 10,000 in the other case.  Mr. Grace, I'm
11  also concerned that to the degree that your client is a sworn
12  law enforcement officer and yet is accused of the kind of
13  conduct that is set forth in the complaint with a great deal of
14  specificity, that suggests a greater concern for the Court
15  than, you know, somebody in his 20s who's going to be in the
16  custody of his mother.

17          So I mention that to you because I wanted to give you
18  the chance to react to that and also to what we said about the
19  firearm.

20          MR. GRACE:  Your Honor, I don't mean to interrupt you.
21  It's just so hard with these new proceedings.  Obviously if we
22  were face to face, I would know the proper time that you would
23  give me a moment to talk.  So I don't want you to think I'm
24  being disrespectful.

25          THE COURT:  Oh, no, I don't think that at all.  I

1    don't think that at all.  Go ahead.

2            MR. GRACE:  Okay.  So I would just ask the Court.  I
3    get your understanding of the Rocky Mount case that you have.
4    I have not reviewed that case, but I don't know what the
5    hardship was on that police officer.  I don't know if his
6    collective bargaining agreement says:  Do you know what?  Even
7    though you're under indictment and there is a condition that
8    you not possess a weapon, whether you still have due process
9    rights and you have the right to remain getting paid and what
10   other status they have.

11           So I'd just ask the Court.  You know, I don't know if
12   we are comparing apples to apples here because the hardship is
13   strong on my client.  Not having the right to possess a weapon,
14   the hardship is one in which he is not going to be paid, he's
15   not going to get health care, and he is unfortunately not going
16   to accrue pension benefits.

17           THE COURT:  Well, what's your response to what I told
18   you about that?  I have a concern that you don't really know
19   that right now because your client has an ability to challenge
20   any of those actions like that.  We still don't really know
21   exactly what the police department would do in that respect,
22   whether they would seek those kinds of remedies or not.  We
23   have to see what they order.  I know you have a familiarity
24   with how the police department works and I know you have
25   experience as an FOP attorney and I think that's great, but I

1  just don't think that we really know about that circumstance
2  right now.

3          MR. GRACE:  I would agree with you.  The only thing I
4  can tell you, as someone who's been doing this for as long as I
5  have, historically the police department stands back and lets
6  the criminal courts do what they are going to do.  The officer,
7  if he's fit for duty, meaning he has a driver's license and he
8  has a FOID card and he's physically able to do his job, will be
9  placed into the call-back unit.

10          I don't know if they'll ask him to leave in this case.
11 They certainly could if they wanted to, I suppose, but I would
12 profess -- or predict, I guess, is a better word -- that they
13 would probably just put him in call back while this case is
14 pending.

15          THE COURT:  Well, I appreciate your candor and
16 particularly with the issue of your agreement that we really
17 don't know precisely what they would do, and I think from my
18 perspective, you know, just as the police department might let
19 the criminal courts do what the criminal courts are going to
20 do, I need to do what the courts need to do to protect the
21 community and assure appearance and enter a set of conditions
22 that are appropriate and also that are fair to everybody.  I'm
23 sensitive to how others have been treated as well, not only in
24 Virginia but in this jurisdiction, so I am going to require the
25 condition that he not possess a firearm, destructive device, or

1   other weapon.

2           Let me turn back to Mr. Cooke.  Have we covered all of

3   the disputes right now between you, between the Government and

4   Mr. Chwiesuik, as far as the release conditions?

5           MR. COOKE:  I believe so.  Yes, Your Honor.

6           THE COURT:  All right.  Mr. Grace, did you have

7   anything else?  If you wanted to address what I'm telling you

8   I'm very inclined to do, which is a $15,000 face amount on that

9   unsecured bond, now would be your chance to do that.

10          MR. GRACE:  Judge, I don't think that your inclination

11  to increase the unsecured bond is an unreasonable position for

12  the Court to take, so $15,000 unsecured I think is okay.

13          THE COURT:  Very well.  So those are going to be the

14  conditions.  What I think we should do next, because we're

15  going to enter this order, is I just need to check with

16  pretrial services.

17          So refresh my memory.  Who do we have on the line for

18  pretrial services?

19          MS. CHAPMAN:  Kathryn Chapman, Your Honor.  Thank you.

20          THE COURT:  Ms. Chapman, the question I have for you

21  is this.  Hearing our discussion today and being aware of the

22  options available under the statute for release conditions, is

23  there any particular release condition that you either heard

24  the Court is about to impose or perhaps that we've not

25  discussed that pretrial services wants to be imposed?  Can you

1      please tell the Court?

2            MS. CHAPMAN:  Yes, Your Honor.  The only condition

3      pretrial services would seek at this point to be added would be

4      for the defendant to surrender his FOID card.

5            THE COURT:  Yes, I understood that really to be a part

6      of what we're talking about here in terms of firearms.  I think

7      that goes with not possessing a firearm.  I think it goes with

8      being in a residence where there are no firearms.  Ms. Chapman,

9      are you aware of whether there are firearms in the defendant's

10      current residence?

11            MS. CHAPMAN:  Your Honor, yes, that is my

12      understanding after speaking with the defendant.

13            THE COURT:  All right.  So just to be clear,

14      Mr. Grace, this condition of not having weapons in that home

15      does not mean that the weapons have to be surrendered to any

16      authority.  They just need to be stored someplace else, you

17      know, privately or what have you.

18            So anything else, Ms. Chapman?

19            MS. CHAPMAN:  No, Your Honor.  Our office will go over

20      the details of his surrender with the defendant after court

21      today.

22            THE COURT:  Okay.  So I don't have anything else at

23      this point.  What I want to do is go through the conditions

24      with Mr. Chwiesuik, and I'll go through them and ask him,

25      Mr. Grace, whether he understands and agrees with them.  I want

1 to make sure we do that. I'm assuming you have no objection to
2 my doing that, so I'm going to ask him to answer yes or no to
3 does he understand and agree.
4     MR. GRACE: No, Judge. I understand. That's fine.
5     THE COURT: Very well.
6     MR. COOKE: Your Honor --
7     THE COURT: I'm sorry. Who wishes to speak? I
8 couldn't tell.
9     MR. COOKE: Your Honor, this is John Cooke for the
10 United States. I apologize for interrupting.
11     THE COURT: It's fine. We don't have --
12     MR. COOKE: One thing I wanted to bring --
13     THE COURT: We don't have non-verbal communication
14 here, and it's tough on the telephone. So I'll give you the
15 same leeway that I give Mr. Grace. What did you want to tell
16 the Court?
17     MR. COOKE: Yeah, there is one thing I wanted to add
18 that falls sort of the under the rubric of conditions, Judge.
19 I think we would ask that the defendant report to the district
20 court for an initial -- the district court in the District of
21 Columbia for an initial appearance on Wednesday, June 16th, at
22 1:00 p.m. That appearance can take place by video, and I do
23 have video instructions that I can share with the defendant's
24 attorney.
25     THE COURT: Well, let me stop you for a second. Would

1   that be, would that be Judge Meriweather?

2         MR. COOKE:  I'm not precisely sure whether it would be

3   before the same judge who swore out the complaint, Judge.

4         THE COURT:  Okay.  That's right.  Well, I think we

5   don't know yet what courtroom or what judge it would be.  I

6   think we would know that it's in the District of Columbia.  One

7   of the mandatory release conditions is that the defendant

8   appear in court as required, and we can specify in the order

9   that that appearance is 1:00 o'clock p.m., June 16th, in the

10   District of Columbia.

11         I don't want to require here or direct here that it be

12   by video, but it's going to be in any manner as authorized by

13   the District of the District of Columbia and Mr. Cooke.  So

14   that's something that the Government and Mr. Grace or any

15   D.C.-based attorney would work out with the court.

16         How does that sound to you, Mr. Cooke?

17         MR. COOKE:  Very good, Your Honor.  Thank you.

18         THE COURT:  Okay.  Mr. Grace?

19         MR. GRACE:  No objection.

20         THE COURT:  All right.  Anything else, Mr. Cooke?  If

21   there is, just let me know.

22         MR. COOKE:  No, Judge.  Thank you.

23         THE COURT:  Okay.  So I'm going to go through these

24   conditions with you, Mr. Chwiesuik, and I'll just ask you if

25   you understand and agree with them.

1          You must not violate any federal, state, or local law

2   while on release.  Do you understand and agree with that?

3          THE DEFENDANT:  I understand, and I agree.

4          THE COURT:  You must cooperate in the collection of a

5   DNA sample if it's authorized by federal statute.  You must

6   advise the Court or the pretrial services officer or

7   supervising officer in writing before you make any change of

8   residence or telephone number.  You have to appear in court as

9   required, and if you're convicted, you have to surrender as

10  directed to serve a sentence that the court may impose.

11         The next court appearance will be 1:00 p.m. in the

12  District of District of Columbia as directed by the Court on

13  the 16th of June of 2021, and you'll have to sign an appearance

14  bond which we'll talk a little bit more about in a minute.

15         Those are what we refer to statutorily as the

16  mandatory release conditions.  Do you understand and agree with

17  them, sir?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  All right.  So now I'm going to go through

20  additional conditions of release.  So you are going to be

21  required to submit to supervision by and report for supervision

22  to the U.S. Pretrial Services office as directed, and you will

23  be required also to continue employment or actively seek it.

24  Do you understand and agree with that, sir?

25         THE DEFENDANT:  Yes.

1       THE COURT:  You'll be required to surrender any

2    passport that you have or may have to the U.S. Pretrial

3    Services office and to not obtain a passport or other

4    international travel document.  Do you understand and agree

5    with that?

6       THE DEFENDANT:  Yes, I do.

7       THE COURT:  Now there's a travel restriction in the

8    order; that is, you are to abide by a restriction on your

9    personal association, residence, or travel.  The restriction is

10   no travel outside of the Northern District of Illinois without

11   prior approval of U.S. Pretrial Services, no travel outside of

12   the United States without prior notification and approval from

13   the U.S. District Court for the District of Columbia, and I

14   will note that at least implicit in that restriction is if you

15   have to travel in person to the District of Columbia for court

16   appearances in this case, you'll be permitted to do that.

17      Do you understand and agree with that, sir?

18      THE DEFENDANT:  Yes, I do.

19      THE COURT:  You're further going to be required to not

20   possess a firearm, destructive device, or other weapon.  Do you

21   understand and agree with that, sir?

22      THE DEFENDANT:  Yes, yes, I do.

23      THE COURT:  You're further required to not use alcohol

24   excessively.  Do you understand and agree with that?

25      THE DEFENDANT:  Yes, I agree.

1        THE COURT:  You're required to not use or unlawfully

2  possess a narcotic drug or other controlled substances defined

3  in Title 21 of the U.S. Code, section 802, unless prescribed by

4  a licensed medical practitioner.  Do you understand and agree

5  with that, sir?

6        THE DEFENDANT:  Yes, I understand.

7        THE COURT:  An additional condition is that you report

8  as soon as possible to pretrial services or the supervising

9  officer every contact that you have with law enforcement

10  personnel, including arrests, questioning, or traffic stops.

11  I'll have a little more on that in a minute.  Do you understand

12  and agree with that, sir?

13        THE DEFENDANT:  Yes, yes, I do.

14        THE COURT:  I'm going to add for you, Mr. Chwiesuik,

15  that I think it's understood in this case at least as of now

16  you're assigned to Chicago Police Department desk duty and,

17  therefore, you will have contact with law enforcement in your

18  everyday capacity as a police officer on desk duty, and you

19  will not have to report that.  Instead, it would be any type of

20  contact where you're arrested, you're questioned by police

21  officers, or you're stopped by a police officer.  That would

22  include the Chicago Police Department, but it would not be

23  within your conduct of your everyday job responsibilities.

24        Do you understand and agree with that, sir?

25        THE DEFENDANT:  Yes.

1    THE COURT:  Ms. Chapman, I just wanted to make sure
2  that my caveat on that condition was stated to the satisfaction
3  of pretrial services.
4    MS. CHAPMAN:  Yes, Your Honor.  Thank you.
5    THE COURT:  Very well.  So another condition, sir, is
6  that you're required to stay away from Washington, D.C., during
7  the pendency of the case unless for scheduled court
8  appearances, meetings with U.S. Pretrial Services, or
9  consultation with counsel.  Do you understand and agree with
10  that?
11    THE DEFENDANT:  Yes, I do.
12    THE COURT:  You are also required to participate in
13  all future legal proceedings as directed.  Do you understand
14  and agree with that?
15    THE DEFENDANT:  Yes, I understand and I agree.
16    THE COURT:  Now, we covered earlier in the mandatory
17  conditions that you must not violate any state, federal, or
18  local law, but stated in the order is that you also shall not
19  commit any state or federal crimes.  Do you understand and
20  agree with that, sir?
21    THE DEFENDANT:  Yes, yes, I do.
22    THE COURT:  Okay.  I also am including in this order,
23  as we discussed, a requirement that you surrender any FOID card
24  that you possess.  Do you understand and agree with that?
25    THE DEFENDANT:  Yes, yes, I do.

1     THE COURT:  And I'm also requiring that in the

2  residence where you will be living, whatever that residence is,

3  there are to be no firearms in that residence, and if there are

4  any there now, they are to be removed to another location.  Do

5  you understand and agree with that, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  So I have a question for you,

8  Mr. Chwiesuik, and that is in order to process the paperwork

9  here.  I want to know whether you would consent to Mr. Grace,

10 your counsel, signing the release order and the appearance bond

11 with your authority and his initials.  If that is something

12 you'd consent to -- and you don't have to -- it might make

13 things move a little more quickly this afternoon, but it's up

14 to you.  Do you consent to him signing those documents for you,

15 sir?

16         THE DEFENDANT:  Yes, I do consent.

17         THE COURT:  Okay.  Let me just further tell you a

18 couple things that I think we do need to cover because this is

19 a removal matter.  Okay?  That is, I have reviewed the removal

20 affidavit, and I've seen that the criminal complaint and the

21 arrest warrant do appear to be true and correct and reliable

22 electronic copies of the documentation from the District of

23 Columbia.  Under the rules, I would then be required to have

24 you removed, although you're not being removed in custody

25 because you're being released, and the case removed to the

1   District of Columbia.

2          But there is one other issue that we need to cover on

3   that, and that is whether you wish to have a hearing on the

4   issue of identity, in other words, whether you are the person,

5   Karol Chwiesuik, who is charged in the District of Columbia

6   proceedings.  You have a right to contest that, or you can

7   waive it.

8          So, Mr. Grace, can you tell me what your client's

9   preference is on that issue?

10         MR. GRACE:  Judge, our position on this would be that

11  we acknowledge that we are Karol Chwiesuik.

12         UNIDENTIFIED SPEAKER:  Under the conditions he is

13  being release right now.

14         THE COURT:  All right.  I've got to tell you, I can

15  really only hear one person talk at a time.  I was recognizing

16  Mr. Grace.  I couldn't quite hear.

17         UNIDENTIFIED SPEAKER:  I'm on the phone now.

18         THE COURT:  Whoever is talking, you've got to mute

19  yourself or stop talking because we can't do a court proceeding

20  when you're doing that.  It's a little like walking into court

21  with a hearing going on and saying:  Hello, I'm John Smith.

22         You wouldn't do that.  So I think you're muted, and I

23  appreciate that.

24         I'm sorry, Mr. Grace.  I really couldn't hear you.

25  What's your preference on the issue of identity?

1      MR. GRACE:  So this is Tim Grace, Judge.  Yes, so my

2   position is that we acknowledge that we are Karol Chwiesuik,

3   the person who has been charged with the crimes.  Obviously we

4   are not making any type of admission to any of the evidence of

5   the complaint.

6      THE COURT:  All right.  What can you tell me about

7   preliminary examination in terms of either a waiver or whether

8   you would wish to have that held or reserve the issue for the

9   District of Columbia, or whether you want to schedule a

10   preliminary examination here in this court?

11      MR. GRACE:  I believe -- Your Honor, this is Tim

12   Grace.  I believe that we would reserve that issue.  I don't

13   know if I will be the trial counsel on this matter.  It's going

14   to D.C., so I kind of believe that that decision possibly

15   should be made by counsel in the District of Columbia.

16      THE COURT:  All right.  Let me tell you then that I'm

17   going to go ahead and set a status hearing on the preliminary

18   examination.

19      Ms. Harvey, can you give me a time on Friday of next

20   week.

21      THE CLERK:  Sure, Judge.  One moment.

22      MR. GRACE:  Your Honor, this is Tim.  I don't want to

23   interrupt you.

24      THE COURT:  Yes.

25      MR. GRACE:  Will we do the preliminary hearing here in

1 Chicago?

2 THE COURT: Let me finish. I think all of your

3 questions will be answered.

4 MR. GRACE: Okay.

5 THE COURT: I'm sorry, Ms. Harvey. Can you give me a

6 time for that?

7 THE CLERK: Yes, we can do 2:00 o'clock on Friday.

8 THE COURT: Okay. So, Mr. Grace, what you just told

9 me about your client's preference on preliminary examination,

10 if you'll forgive me, was a little bit equivocal. So what I

11 want to do is I'm just going to set a preliminary hearing

12 examination status, a status hearing at 2:00 o'clock next

13 Friday. That should give you time with your client to figure

14 what you'd like to do.

15 If your client decides that he wants to reserve

16 everything for the District of Columbia, you can notify the

17 Court of that by letter, and we will then proceed to reserve

18 that for you and cancel the preliminary examination hearing

19 status at 2:00 o'clock Friday. Does that work for you,

20 Mr. Grace?

21 MR. GRACE: Yeah, that's a good idea, Judge. I

22 appreciate that.

23 THE COURT: Okay. Absolutely. So I think we actually

24 might be done this morning unless there's anything I missed.

25 There is, I suppose, one thing. It's Rule 20. Rule 20

1    concerns transfer of the case.  This is not an indicted case
2    yet, right?  It's charged by complaint.
3           But generally Rule 20 allows for transfer of the
4    matter to the district of arrest, which is here, from the
5    district of prosecution, which is the District of Columbia, if
6    a bunch of conditions are satisfied, namely, if the defendant
7    wishes to plead guilty or nolo contendere and waives trial in
8    the District of Columbia.  If he consents in writing to the
9    Court's disposing of the case in the Northern District of
10   Illinois and if he files that statement in the Northern
11   District of Illinois and if the United States Attorneys in both
12   districts approve the transfer in writing, then it could be
13   transferred under Rule 20 to this Court.  I think I am required
14   under the rules to let you know that, but you are not required
15   to respond to that in any way.
16          So finally, Mr. Cooke, anything else we need to cover
17   today?
18          MR. COOKE:  No.  Thank you very much, Your Honor.
19          THE COURT:  Mr. Grace, anything else we need to cover
20   today?
21          MR. GRACE:  No, sir.  Thank you for your time.
22          THE COURT:  All right.  I thank counsel, and we're
23   adjourned.
24       (Proceedings concluded.)
25

34

1                 C E R T I F I C A T E

2          I, Patrick J. Mullen, do hereby certify that the

3 foregoing is an accurate transcript produced from an audio

4 recording of the proceedings had in the above-entitled case

5 before the Honorable GABRIEL A. FUENTES, one of the magistrate

6 judges of said Court, at Chicago, Illinois, on June 11, 2021.

7

8                          */s/ Patrick J. Mullen*
                           Official Court Reporter

9                            United States District Court
                           Northern District of Illinois

10                            Eastern Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25